UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SHARON NOBLE
48 John Street
Akron, New York  14001

SUSAN METZ
8917 Boyce Road                                         **COMPLAINT**
Corfu, New York  14036
                                                        Civ. No.:

                          Plaintiffs,

            v.

ADESA, INC.
13085 Hamilton Crossing B
Carmel, Indiana  46032

ADESA NEW YORK, LLC, f/k/a
ADESA NEW YORK, INC.
12200 Main Street
Akron, New York  14001

ALLETE, INC.
30 W. Superior Street
Duluth, Minnesota  55802

                          Defendants.

---

Plaintiffs, by their attorneys, OFFERMANN, CASSANO, GRECO, SLISZ &

ADAMS, LLP, as and for their Complaint against Defendants alleges that:

**JURISDICTION AND VENUE**

1.    This action is authorized by and instituted under the Age Discrimination in

Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* (hereinafter "ADEA").  Plaintiffs

invoke the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331, 1337, and 1343(4).  The

matter in controversy arises under an Act of Congress regulating commerce and relating to age and sex discrimination and it exceeds the sum and value of $10,000.

2. The venue of this action is properly placed in the Western District of New York pursuant to 28 U.S.C. § 1391. Plaintiffs reside in this District. Upon information and belief, Defendants were and still are doing business in this District, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

### PARTIES

3. Plaintiff, SUSAN METZ, is a female citizen of the United States of America, age 51, and resides in the Town of Corfu, County of Genesee, State of New York.

4. Plaintiff, SHARON NOBLE, is a female citizen of the United States of America, age 55, and resides in the Village of Akron, County of Erie, State of New York.

5. At all relevant times, Plaintiffs were "employees" as defined in § 11(f) of the ADEA, 29 U.S.C. § 630(f). Plaintiffs were also "employees" as defined in the New York State Human Rights Law, Executive Law § 290 *et seq.*

6. Upon information and belief, Defendant, ADESA, INC., was and still is a business corporation incorporated under the laws of the State of Indiana, duly authorized to do business in the State of New York, with its principal office located in Carmel, Indiana, and is doing business in the County of Erie, State of New York.

7. Upon information and belief, Defendant, ADESA NEW YORK, LLC, f/k/a ADESA NEW YORK, INC. (hereinafter ADESA NEW YORK), was and still is a business corporation incorporated under the laws of the State of New York, with its principal office located in Akron, New York.

2

8. Upon information and belief, Defendant, ALLETE, INC., was and still is a business corporation incorporated under the laws of the State of Minnesota, duly authorized to do business in the State of New York, with its principal office located in Duluth, Minnesota.

9. At all relevant times, Defendant, ADESA, INC., was and still is an "employer" as defined in § 11(b) of the AEDA, 29 U.S.C. § 630(b) and the New York State Human Rights Law, Executive Law § 290 *et seq.*

10. At all relevant times, Defendant, ADESA NEW YORK, was and still is an "employer" as defined in the New York State Human Rights Law, Executive Law § 290 *et seq.*

11. At all relevant times, Defendant, ALLETE, INC., was and still is an "employer" as defined in § 11(b) of the AEDA, 29 U.S.C. § 630(b) and the New York State Human Rights Law, Executive Law § 290 *et seq.*

12. Defendant, ADESA, INC., has continuously been engaged in an industry affecting within the meaning of § 11(b) of ADEA, 29 U.S.C. § 630(b).

13. Defendant, ALLETE, INC., has continuously been engaged in an industry affecting within the meaning of § 11(b) of ADEA, 29 U.S.C. § 630(b).

### STATEMENT OF CASE - SHARON NOBLE

14. Plaintiff, SHARON NOBLE, was employed by Defendants, ADESA, INC., and/or ADESA NEW YORK, beginning in or about September 1992 in the position of driver.

15. At all times hereinafter mentioned, ADESA NEW YORK, was and is a subsidiary of ADESA, INC.

16. In or about fall 2001, ADESA, INC., was acquired by ALLETE, INC.

3

17. Within the first weeks of Plaintiff, SHARON NOBLE's, employment she was transferred to the Registration Department in the position of Data Entry.

18. In our about 1995, Plaintiff, SHARON NOBLE, was assigned the duties of Assistant Registration Supervisor.

19. Within a few months thereafter, in or about 1995, Plaintiff, SHARON NOBLE, was promoted to the position of Registration Supervisor.

20. During the course of Plaintiff, SHARON NOBLE's, employment, Defendants engaged in the business of automobile auction and appraisers.

21. During her employment, Plaintiff, SHARON NOBLE, held the position of Registration Supervisor and reported to John Yingling. During said time period, the registration staff reported to the Assistant Registration Supervisor, Plaintiff, SUSAN METZ, who reported to Plaintiff, SHARON NOBLE, the Registration Supervisor.

22. During the course of her employment, Plaintiff, SHARON NOBLE, performed her duties and responsibilities in a satisfactory manner.

23. Plaintiff, SHARON NOBLE, was terminated on or about February 5, 2003, and was 53 years of age at that time.

24. Defendants unlawfully terminated Plaintiff, SHARON NOBLE, on the basis of her age.

25. At the time of Plaintiff, SHARON NOBLE's, termination, the job of Registration Supervisor was changed to the title of Manager of Dealer Services, but the job duties remained the same.

4

26. Upon information and belief, after her termination, Plaintiff, SHARON NOBLE, was replaced by Dawn Thurnherr, who was in her mid 30's, who then became known as Manager of Dealer Sales.

27. Upon information and belief, Brandi Clark, an employee in her mid 20's, was promoted from the position of Assistant Officer Manager to the position of Officer Manager which was vacated by Dawn Thurnherr.

28. The Assistant Registration Supervisor, Plaintiff, SUSAN METZ, who was age 49, was replaced by Karen Brown, Transportation Supervisor, who was in her mid 20's and given the title of Registration Supervisor.

29. A. J. Shisler, in his mid 20's, was transferred to take Karen Brown's place as Transportation Supervisor.

30. Michael DeMarco, in his mid 30's, who was the Operations Specialist, was transferred to the position of Outside Lot Crew and Driver Manager, previously held by A. J. Hisler.

31. On or about February 5, 2003, Plaintiff, SHARON NOBLE, was informed by Warren Clauss, General Manager, that Defendants were reorganizing and that Plaintiff, SHARON NOBLE, did not fit into the reorganization plan. Plaintiff, SHARON NOBLE's, request to perform another task was denied.

32. As demonstrated by the actions of Defendants, including but not limited to those described above, Defendants treated Plaintiff, SHARON NOBLE, adversely because of her age and engaged in a pattern of knowing, intentional, willful, and voluntary course of wrongful discriminatory conduct.

5

33.     As a result of the actions of Defendants, including but not limited to those described above, Defendants willfully and intentionally engaged in a course of conduct designed to make it appear as though Plaintiff, SHARON NOBLE, was discharged for non-discriminatory reasons.

34.     As a result of the conduct of Defendants, its agents, servants, and/or employees, Plaintiff, SHARON NOBLE, has been deprived of terms and benefits of employment, including but not limited to, salary, bonuses, vacation time, sick time, medical insurance, dental insurance, life insurance, optical insurance, disability insurance, and/or 401k/pension benefits.

35.     As a result of the conduct of Defendants, its agents, servants, and/or employees, Plaintiff, SHARON NOBLE, has suffered severe emotional distress, degradation, humiliation, depression, anxiety attacks, panic attacks and physical injuries, including but not limited to, sleeplessness, stomach and gastrointestinal problems.

### STATEMENT OF CASE - SUSAN METZ

36.     Plaintiff, SUSAN METZ, was employed by Defendants, ADESA, INC., and/or ADESA NEW YORK, beginning in or about February 1998 in the position of Data Entry in the Registration Department.

37.     In or about 1999, Plaintiff, SUSAN METZ, was assigned the Assistant Registration Supervisors duties, but was not made aware that she held the title.

38.     In or about 2000, Plaintiff, SUSAN METZ, also was assigned duties in the Outdoor Ground Maintenance Department.

39.     At all times hereinafter mentioned, ADESA NEW YORK, was and is a subsidiary of ADESA, INC.

6

40.    In or about fall 2001, ADESA, INC., was acquired by ALLETE, INC.

41.    During the course of Plaintiff, SUSAN METZ's, employment, Defendants engaged in the business of automobile auction and appraisers.

42.    During her employment, Plaintiff, SUSAN METZ, performed the duties of Assistant Registration Supervisor and reported to the Registration Supervisor, Plaintiff, SHARON NOBLE, but was not made aware that she held the title.

43.    During the course of her employment, Plaintiff, SUSAN METZ, performed her duties and responsibilities in a satisfactory manner.

44.    On February 5, 2003, Plaintiff, SUSAN METZ, 49 years of age at that time, was told by Warren Clauss, General Manager, that the company was reorganizing, that her position was being eliminated, and that she no longer had a job.

45.    On or about February 6, 2003, Plaintiff, SUSAN METZ, asked Phyllis Stevens, Human Resources, why she could not take a pay cut, go part time or be transferred to another department and was told that her position was no longer there and ADESA Corporation, ALLETE, Inc. and/or ADESA NEW YORK, had no job for her. Plaintiff, SUSAN METZ, then asked if in the future things picked up for ADESA Corporation, ALLETE, Inc. and/or ADESA NEW YORK, would she be able to come back and was told "no."

46.    Defendants unlawfully terminated Plaintiff, SUSAN METZ, on the basis of her age.

47.    Plaintiff, SUSAN METZ, was replaced by Karen Brown, Transportation Supervisor, who was in her mid-twenties, and given the title of Registration Supervisor.

48.    After such terminations, the registration staff reported to the Registration Supervisor, Karen Brown, who reported to the Manager of Dealer Services, Dawn Thurnherr.

7

Thus, the job of Registration Supervisor was changed to the title of Manger of Dealer Services, but the job duties remained the same.

49. Plaintiff, SHARON NOBLE, as the Registration Supervisor, was replaced by Dawn Thurnherr, who was in her mid- thirties, who then became known as the Manager of Dealer Sales. Brandi Clark, in her mid- twenties, was promoted from the position of Assistant Office Manager to the position of Office Manager which was vacated by Dawn Thurnherr.

50. As a result of the conduct of Defendants, its agents, servants, and/or employees, Plaintiff, SUSAN METZ, has been deprived of terms and benefits of employment, including but not limited to, salary, bonuses, vacation time, sick time, medical insurance, dental insurance, optical insurance, disability insurance, and/or 401k/pension benefits.

51. As a result of the conduct of Defendants, its agents, servants, and/or employees, Plaintiff, SUSAN METZ, has suffered severe emotional distress, degradation, humiliation, depression, anxiety attacks, panic attacks and physical injuries, including but not limited to, sleeplessness, stomach and gastrointestinal problems.

## JOINT STATEMENT OF FACTS

52. Upon information and belief, after Plaintiffs' respective terminations, Plaintiff, SHARON NOBLE, was replaced by Dawn Thurnherr, who was in her mid 30's, who then became known as Manager of Dealer Sales.

53. Upon information and belief, Brandi Clark, an employee in her mid 20's, was promoted from the position of Assistant Officer Manager to the position of Officer Manager which was vacated by Dawn Thurnherr.

54. Plaintiff, SUSAN METZ, who was age 49, was replaced by Karen Brown, Transportation Supervisor, who was in her mid 20's and given the title of Registration Supervisor.

8

55. A. J. Shisler, in his mid 20's, was transferred to take Karen Brown's place as Transportation Supervisor.

56. Michael DeMarco, in his mid 30's, who was the Operations Specialist, was transferred to the position of Outside Lot Crew and Driver Manager, previously held by A. J. Hisler.

57. A.J. Shisler, in his mid-20s, was transferred to take Karen Brown's place as Transportation Supervisor. Michael DeMarco, in his mid-30s, who was the Operation Specialist, was transferred to the position of Outside Lock Crew and Driver Manager, previously held by A.J. Shisler.

58. On or about February 9, 2003 and February 16, 2003, Defendants advertised in *The Genesee Valley Penney Saver* for full-time positions available in registration. Thereafter, upon information and belief, Defendants hired a person in registration to begin working on Monday, March 10, 2003.

59. In addition, at different points in time after Plaintiffs' termination, Defendants advertised in *The Genesee Valley Penney Saver* for available full-time and part-time positions in various departments.

60. Upon information and belief, on or about March 1, 2003 and continuing, Defendants advertised in *The News of Akron-Newstead* for available full-time positions in various other departments.

61. Upon information and belief, on or about March 10, 2003 and March 11, 2003, Defendants advertised in *The Batavia Daily News* for available full-time and part-time positions in various departments.

62.    Further, beginning in or about April 2003 and continuing, Defendants advertised on a weekly basis in *The Metro Community News/Depew* for available full-time and part-time positions in various departments.

63.    In addition to the discriminatory conduct set forth above, Defendants subjected its employees to different terms and conditions of employment than younger employees, including, but not limited to issues of termination, discipline and/or enforcement of company policies.

64.    Upon information and belief, on or about January 31, 2003, Terry Janicz, a 54-year old man with six years of experience was terminated by Defendants.

65.    Upon information and belief, on or about January 8, 2003, employee, Connie Giardina, 69 years of age, was fired from Defendants for sending an e-mail to a co-worker stating that another employee in the department was "snotty" and should be fired.  In contrast, Debra Robbins and Donna King, both employees in their 30's, sent different e-mails of a sexually offensive nature during work hours to other co-employees but were not subject to discipline even when Defendants became aware of this conduct, including but not limited to Warren Clauss, General Manager of Defendant, ADESA NEW YORK

66.    Upon information and belief, employee, Robert Towlson, approximately 60 years of age, was fired in or about March 2003, for allegedly stealing a T-shirt.  In contrast, upon information and belief, Dawn Thurnherr, an employee in her mid 30's, and Brandi Clark, an employee in her late 20's, used illegal drugs on company premises during work hours for a period of several years with knowledge of management, without any action being taken against them.

67.    In or about summer 2002, Heather Davis, upon information and belief, an individual in her 20's, did not set the brake on an automobile which caused it to roll and hit

10

another automobile. Upon information and belief, the only action taken against her was that she was transferred to a different department at her request.

68. In addition, management for Defendants failed to take action against younger individuals who were often late or did not show up for work. Upon information and belief, employee, Jason Austin, in his early 20's, was late on a regular basis for an extended period of time and no action was taken against him.

69. In or about January 2003, upon information and belief, Jason Austin was involved in a physical fight with a female, Shannon Lamie, in her early 20's. Upon information and belief, no disciplinary action was taken against Shannon Lamie. Upon information and belief, Jason Austin was given three days off from work and transferred to a different department.

70. In or about mid to late 2000, upon information and belief, employees Amy Mault, Julie Warren and Carol Czosek, all in their mid 20's, would go to lunch without punching out and would take an extended lunch period. Upon information and belief, management for Defendants was aware of this activity and no disciplinary action was taken against these employees.

71. In or about fall 2002, upon information and belief, Robert Gay, an employee in his late 20's, was not disciplined for stating, "why the 'fuck' do we have to do the lot crews' work?" Upon information and belief, although management for Defendants was aware of these actions, no action was taken against Robert Gay.

72. In or about fall 2002, Tracy Norton, an employee in his late 30's, left work repeatedly to bring his girlfriend to her place of employment without punching out, and

11

sometimes, returning only to punch out of work and leave for the day. Upon information and belief, management was aware of this conduct and took no disciplinary action against Tracy Norton.

73. In or about summer 2002, upon information and belief, employee, George Larish, an employee in his early 20's was late on various occasions and did not appear for work. During the same period of time, Heather Davis, an employee in her early 20's, was also often late for work. John Yingling, Registration Manager, was aware of these circumstances and permitted this to continue for many months without taken action. Upon information and belief, Dennis Alexander, an employee also in his early 20's, was also often late for work.

74. As demonstrated by the actions of Defendants, including but not limited to those described above, Defendants treated Plaintiffs, adversely because of their age and engaged in a pattern of knowing, intentional, willful, and voluntary course of wrongful discriminatory conduct.

75. As a result of the actions of Defendants, including but not limited to those described above, Defendants willfully and intentionally engaged in a course of conduct designed to make it appear as though Plaintiffs were discharged for non-discriminatory reasons.

### CONDITIONS PRECEDENT TO ACTION

76. Plaintiff, SHARON NOBLE, has complied with all the jurisdictional prerequisites to action § 7(d) of the ADEA, 29 U.S.C. § 626(d) as follows:

a. In accordance with the time prescribed by § 7(d) of the ADEA, 29 U.S.C. § 626(d), on or about November 19, 2003, Plaintiff, SHARON NOBLE, filed a charge and complaint of unlawful employment practices on the basis of age, gender and retaliation with the EEOC.

12

b. On or about the same date as the aforementioned EEOC charge was filed, the EEOC caused a copy of said charge to be filed with the New York State Division of Human Rights.

c. In accordance with 29 U.S.C. § 626(d), Plaintiff, SHARON NOBLE, has not commenced the instant action, until at least 60 days have elapsed since the time of the filing of her charge and complaint of unlawful employment practices on the basis of age with the EEOC.

77. Plaintiff, SUSAN METZ, has complied with all the jurisdictional prerequisites to action § 7(d) of the ADEA, 29 U.S.C. § 626(d) as follows:

a. In accordance with the time prescribed by § 7(d) of the ADEA, 29 U.S.C. § 626(d), on or about November 19, 2003, Plaintiff, SUSAN METZ, filed a charge and complaint of unlawful employment practices on the basis of age, gender and retaliation with the EEOC.

b. On or about the same date as the aforementioned EEOC charge was filed, the EEOC caused a copy of said charge to be filed with the New York State Division of Human Rights.

c. In accordance with 29 U.S.C. § 626(d), Plaintiff, SUSAN METZ, has not commenced the instant action, until at least 60 days have elapsed since the time of the filing of her charge and complaint of unlawful employment practices on the basis of age with the EEOC.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST
DEFENDANTS ADESA, INC. AND ALLETE, INC.**

78. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" though "77" as though fully set forth herein.

13

79.   Plaintiffs were discharged by Defendants ADESA, INC., and ALLETE, INC., because of their age in violation of § 4(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1). Plaintiffs are entitled to relief under the provisions of § 7 of the ADEA, 29 U.S.C. §626.

80.   As a result of the actions, conduct, and omissions of Defendants ADESA, INC., and ALLETE, INC., including but not limited to those described above, Defendants ADESA, INC., and ALLETE, INC., have engaged in a pattern and practice of discrimination against Plaintiffs with respect to their compensation, terms, conditions, and privileges of employment because of their age in violation of § 4(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1), thereby entitling Plaintiffs to relief under the provisions of § 7 of the ADEA, 29 U.S.C. § 626.

81.   Defendants ADESA, INC.'s, and ALLETE, INC.'s, wrongful acts, conduct, and omissions were willful and wanton and done with a reckless disregard of Plaintiffs' rights and feelings in violation of § 4 of the ADEA, 29 U.S.C. § 623, thereby entitling Plaintiffs to awards of exemplary or punitive damages and liquidated damages.

82.   As a result of Defendants ADESA, INC.'s, and ALLETE, INC.'s, wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiffs have been damaged in the amount of $3 million respectively.

83.   Pursuant to § 7(b) of the ADEA, 29 U.S.C. § 626(b), Plaintiffs are entitled to reasonable costs and attorneys' fees.

84.   Pursuant to § 7(c)(2) of the ADEA, 29 U.S.C. § 626(c)(2), Plaintiffs demand a trial by jury as to all issues so triable.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS

85.   Plaintiffs repeat and reallege the allegations contained in paragraphs "1" through "84" as though fully set forth herein.

14

86.   Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a).

87.   During the course of Plaintiffs' employment, Defendants treated Plaintiffs adversely because of their age and engaged in a knowing, intentional, willful, and voluntary course of wrongful discriminatory conduct in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq.*

88.   As a result of Defendants' actions, conduct, and omissions, including but not limited to those described above, Defendants discharged Plaintiffs because of their age in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq.*

89.   Defendants have engaged in a pattern and practice of discrimination against Plaintiffs with respect to compensation, terms, conditions, and privileges of employment because of their age in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq.*

90.   Defendants' wrongful acts, conduct, and omissions, including but not limited to those described above, were willful and wanton and done with a reckless disregard of Plaintiffs' rights.

91.   As a result of Defendants' actions, conduct, and omissions, including but not limited to those described above, Plaintiffs incurred damages including but not limited to, lost wages and employee benefits, lost employment opportunities, mental anguish and embarrassment.

92.   As a result of Defendants' wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiffs have been damaged in the amount of $3 million respectively.

93.   Plaintiffs demand a jury trial as to all issues so triable.

15

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST
## DEFENDANTS ADESA, INC., AND ALLETE, INC.

94.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "93" as though fully set forth herein.

95.    As a result of the acts of age discrimination set forth above, Defendants, ADESA, INC., and ALLETE, INC., their agents, servants, and/or employees, created a hostile working environment in which Plaintiffs, and other similarly situated older employees were intimidated, harassed, and undermined in their attempts to succeed. Defendants, ADESA, INC., and ALLETE, INC., their agents, servants, and/or employees, knew or through the exercise of reasonable diligence should have known of the wrongful and unlawful actions, conduct, and omissions of their agents, servants, and/or employees and took no remedial action.

96.    The effects of this hostile working environment were so severe and pervasive that they affected the terms, conditions, and privileges of the Plaintiffs' employment, constituting unlawful age discrimination in violation of § 4 of the ADEA, 29 U.S.C. § 623.

97.    As a direct and proximate result of Defendants, ADESA, INC.'s, and ALLETE, INC.'s, conduct, and omissions, including but not limited to those described above, Plaintiffs, have been damaged in the amount of $3 million respectively.

98.    Defendants ADESA, INC.'s, and ALLETE, INC.'s, wrongful acts, conduct, and omissions were willful and wanton and done with a reckless disregard of Plaintiffs' rights and feelings in violation of § 4 of the ADEA, 29 U.S.C. § 623, thereby entitling Plaintiffs to awards of exemplary or punitive damages and liquidated damages.

99.    Pursuant to § 7(b) of the ADEA, 29 U.S.C. § 626(b), Plaintiffs are entitled to reasonable costs and attorneys' fees.

16

100.     Pursuant to § 7(c)(2) of the ADEA, 29 U.S.C. § 626(c)(2), Plaintiffs demand a trial by jury as to all issues so triable.

## AS AND FOR A FOURTH CAUSE OF
## ACTION AGAINST ALL DEFENDANTS

101.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "100" as though fully set forth herein.

102.     Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a).

103.     During the course of Plaintiffs' employment, Defendants, ADESA, INC., and ALLETE, INC., their agents, servants, and/or employees created a hostile working environment in which Plaintiffs, and other similarly situated older employees were intimidated, harassed, and undermined in their attempts to succeed, in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq.*

104.     Defendants' wrongful acts, conduct, and omissions, including but not limited to those described above, were willful and wanton and done with a reckless disregard of Plaintiffs' rights under the Human Rights Law of the State of New York.

105.     As a result of Defendants' actions, conduct, and omissions, including but not limited to those described above, Plaintiffs incurred damages, including but not limited to, lost back and future wages and employee benefits, lost employment opportunities, mental anguish, severe emotional distress, and embarrassment.

106.     As a result of Defendants' wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiffs have been damaged in the amount of $3 million respectively.

107.     Plaintiffs demand a jury trial as to all issues so triable.

17

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

1.    On the First Cause of Action, Plaintiffs demand judgment against Defendants ADESA, INC.'s, and ALLETE, INC.'s , as follows:

    a.    For the recovery of $3 million respectively against Defendants ADESA, INC.'s, and ALLETE, INC.'s, as actual damages for loss of revenue, including back pay, front pay, reimbursement for lost pension, loss of future pension, social security, and other past and future benefits, mental aguish, emotional distress, and embarrassment in an equal amount as liquidated damages, and compensatory damages and for punitive damages together with interest as a result of Defendants' discrimination against Plaintiffs;

    b.    For the recovery of costs and counsel fees as provided by statute;

    c.    For trial by jury on all triable issues; and

    d.    For such other and further relief as the Court may deem just, fit, and proper.

2.    On the Second Cause of Action, Plaintiffs demand Judgment against all Defendants as follows:

    a.    For the recovery of $3 million respectively against Defendants as actual damages for loss of revenue, including back pay, front pay, reimbursement for lost pension, loss of future pension, social security, and other past and future benefits, mental aguish, emotional distress, and embarrassment in an equal amount as liquidated damages, and compensatory damages and for punitive damages together with interest as a result of Defendants' discrimination against Plaintiffs;

    b.    For the recovery of costs and counsel fees as provided by statute;

    c.    For trial by jury on all triable issues; and

d.      For such other and further relief as the Court may deem just, fit, and proper.

3.      On the Third Cause of Action, Plaintiffs demand judgment against Defendants ADESA, INC.'s, and ALLETE, INC.'s , as follows:

a.      For the recovery of $3 million respectively against Defendants ADESA, INC.'s, and ALLETE, INC.'s, as actual damages for loss of revenue, including back pay, front pay, reimbursement for lost pension, loss of future pension, social security, and other past and future benefits, mental aguish, emotional distress, and embarrassment in an equal amount as liquidated damages, and compensatory damages and for punitive damages together with interest as a result of Defendants' discrimination against Plaintiffs;

b.      For the recovery of costs and counsel fees as provided by statute;

c.      For trial by jury on all triable issues; and

d.      For such other and further relief as the Court may deem just, fit, and proper.

4.      On the Fourth Cause of Action, Plaintiffs demand Judgment against all Defendants as follows:

a.      For the recovery of $3 million respectively against Defendants as actual damages for loss of revenue, including back pay, front pay, reimbursement for lost pension, loss of future pension, social security, and other past and future benefits, mental aguish, emotional distress, and embarrassment in an equal amount as liquidated damages, and compensatory damages and for punitive damages together with interest as a result of Defendants' discrimination against Plaintiffs;

b.      For the recovery of costs and counsel fees as provided by statute;

19

c.  For trial by jury on all triable issues; and

d.  For such other and further relief as the Court may deem just, fit,

and proper.

Dated: Buffalo, New York
        December 23, 2005

_____
Josephine A. Greco, Esq.
OFFERMANN, CASSANO, GRECO, SLISZ & ADAMS, LLP
Kevin P. Wicka, Esq., of Counsel,
Attorneys for Plaintiffs
1776 Statler Towers
Buffalo, New York  14202-3090
Telephone No.:  (716) 856-4800
E-mail address:  jgreco@statlertowers.com

20